# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LAWRENCE & PETE MARTINEZ,

    Plaintiffs,

v.                                                          CIV 17-0279 MV/KBM

CITY OF RATON POLICE DEPARTMENT,[1]

    Defendant.

## MEMORANDUM OPINION AND ORDER ON PLAINTIFFS' MOTIONS TO COMPEL DISCLOSURE AND REQUESTS FOR A TELEPHONIC HEARING

THIS MATTER comes before the Court on the following motions filed by the pro se Plaintiffs: (1) Motion for and [sic] Order to Disclose the Identity of Undercover Officer #A and or Undercover Officer Lobo Imposing Confidentiality Limitations (*Doc. 12*), filed April 6, 2017; (2) Motion for and [sic] Order to Disclose the Identity of Undercover Officer Lobo and or Undercover Officer #A and All Hooded and Masked Officers Who Entered the Home of Pete Martinez on

---

[1] In certain of the motions filed by Plaintiffs in this case, they have included the following defendants in the case caption: Chief John Garcia, Paul Mares, Matias Apodaca, Undercover Officer #A, Commarder [sic] Eric Padilla, and The Region IV Narcotic Drug Task Force. *See, e.g., Doc. 40.* However, as previously noted by this Court, the Eighth Judicial District Court determined that the Region IV Narcotic Drug Task Force was not a legal entity that could be sued and prohibited Plaintiffs from adding any additional defendants or plaintiffs. *Doc. 9-5*. The case caption reflects the case's current posture, given these rulings by the Eighth Judicial District Court. As the Court clarified at the August 8, 2017 status conference in this case, the City of Raton is the singular defendant in this case. *Doc. 45* at 2. Plaintiff conceded as much at the status conference, and his recent filings with the Court reflect this understanding. *See, e.g., Doc. 49, 55, 57.*

5/18/13 Imposing Confidentiality Limitations (*Doc. 28*), filed May 30, 2017; (3) Request for Telephonic Hearing (*Doc. 29*), filed May 30, 2017; (4) Second Request on a Motion for and [sic] Order to Disclose the Identity of Undercover Officer Lobo and or Undercover Officer #A and All Hooded and Masked Officers Who Entered the Home of Pete Martinez on 5/18/13 Imposing Confidentiality Limitations (*Doc. 38*), filed July 10, 2017; and (5) Second Request for a Telephonic Hearing (*Doc. 40*), filed July 10, 2017.  The foregoing motions are numerous but duplicative. For ease of reference, the Court refers to them collectively as "Plaintiffs' Motions to Compel Disclosure" and "Plaintiffs' Requests for a Telephonic Hearing."

Additionally at a Status Conference held on August 8, 2017, the Court ordered Defendant to provide a supplemental brief addressing the law enforcement privilege, which it asserted in the context of Plaintiffs' Motions to Compel Disclosure.  *Doc. 45*. Defendant filed its supplemental brief on August 22, 2017 (*Doc. 47*), and Plaintiffs responded on August 31, 2017. *See Doc. 49*. Having now reviewed the enumerated motions, the parties' supplemental briefs, the exhibits, and the relevant authorities, the Court finds that Plaintiffs' Motions to Compel Disclosure will be granted in part and that Plaintiffs' Requests for a Telephonic Hearing will be denied.

I. **BACKGROUND**

Plaintiffs brought this cause of action for violations of 42 U.S.C. § 1983, the Fourth Amendment, the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504"), and the New Mexico Tort Claims Act.

*Doc. 1-2* at 1. Plaintiffs' claims arise out of the arrest and allegedly prolonged detention of Plaintiff Lawrence Martinez, the "de facto arrest" of Plaintiff Pete Martinez, and the search of Plaintiffs' home.

The Complaint alleges that in late 2012 or early 2013, Plaintiff Pete Martinez met with then-acting Chief of Police for the City of Raton, Captain John Garcia, to express concerns that his son, Plaintiff Lawrence Martinez, was using drugs and to encourage Captain Garcia to "take care of the drug dealer." *Doc. 1-2* at ¶ 10. According to Plaintiffs, Captain Garcia then recruited his nephew to solicit drugs from Lawrence Martinez. *Id.* at ¶ 11. Around the same time, Plaintiffs assert that the Region IV Narcotic Drug Task Force began an operation within the City of Raton to solicit narcotics from known drug traffickers. *Id.* at ¶ 12.

According to the police reports and arrest affidavit submitted by Plaintiffs in conjunction with their Complaint and briefing on the subject motions, an undercover officer referred to as "Officer Lobo" made contact with Lawrence Martinez in the school zone of an elementary school on March 22, 2013, and purchased what was later determined to be methamphetamine. *See, e.g., Doc. 1-2* at Ex. 4.

Lawrence Martinez was charged in the State District Court in Colfax County with "trafficking a controlled substance to wit: Methamphetamine." *See Doc. 1-2* at Ex. 3 (capitalization omitted). However, according to state court documents and audio transcripts submitted by Plaintiffs, the criminal case against Lawrence Martinez was dismissed when the state court judge granted his Motion to Dismiss for Failure to Comply with Rules of Discovery. *See Doc. 1-2* at

3

Ex. 5. Judge Paternoster determined that the State failed to respond to Lawrence Martinez's motion to dismiss and failed to "accomplish[] discovery or show[] good cause why they were entitled to an extension" for doing so. *Id.*

## II. LEGAL STANDARD

Initially, the Court takes note of Plaintiffs' *pro se* status. "[A] *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (citations omitted). In *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), the Tenth Circuit stated:

> We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

Even so, the court "will not supply additional factual allegations to round out a plaintiff's complaint or to construct a legal theory on a plaintiff's behalf." *Id.*

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery, providing that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. The party requesting discovery may move

4

to compel the disclosure of any materials requested so long as such discovery is relevant and otherwise discoverable. *See* Fed. R. Civ. P. 37.

III. **ANALYSIS**

Plaintiffs contend that the affidavit in support of the warrant for Lawrence Martinez's arrest was false and misleading. As a result, they maintain that the arrest was unsupported by "reasonable cause or evidence to believe that he had committed or was about to commit a crime." *Doc. 1-2* at 1. Plaintiffs contend that they were both "subjected to an unreasonable search and seizure of their person and their home." *Id.* Pete Martinez alleges that he and his daughter were "brutally terrified by the conduct of the hooded and masked [officers] who entered their home without just cause or evidence in the early AM hours on May 18, 2013 to arrest Lawrence Martinez." *Id.* Moreover, Plaintiffs complain that Defendant "lied about and continue to withhold information related to the alleged drug buy from Lawrence Martinez." *Doc. 49* at 2.

**B. Identities of Undercover Officers**

In certain of their Motions to Compel Disclosure, Plaintiffs initially sought an order from the Court compelling disclosure of the identities of officers identified in Lawrence Martinez's criminal case as "Undercover Officer #A" and "Undercover Officer Lobo" as well as "all hooded and masked Officers who entered the home of Pete Martinez." *See, e.g., Doc. 43* at 1. Additionally, they sought the identity and location of any informants used in the alleged drug buy from Lawrence Martinez and the tactical plans of the Drug Task Force. *Doc. 49* at 2. They appear to have narrowed the scope of their requests in subsequent

5

briefing, however, indicating that "Undercover Officer Lobo and or Undercover Officer #A is to [sic] only identity needed at this time." *Doc. 49* at 4. Plaintiffs explain that they "know beyond [a] reasonable doubt that Mr. Steven Chairmonte along with Officer Lobo are the only material witnesses, and now believe that Mr. Chairmonte is deceased."[2] *Doc. 49* at 3. Conceding that the identities of the other officers who entered Pete Martinez's home "won't matter," Plaintiffs reaffirm that that they seek only the identities of Undercover Officer Lobo and/or Undercover Officer #A. *Doc. 49* at 10; *see also Doc. 49* at 11 ("Plaintiffs are not interested in deposing anyone who was not physically present during the encounter with Plaintiff Lawrence Martinez on March 23, 2013 . . . ."). It appears that Plaintiffs seek the identities of Undercover Officer Lobo and/or Undercover Officer #A so that they may depose them.[3] *Doc. 49* at 4 (referring to the "only two material witnesses along with Tim Zamora that the Plaintiff's [sic] plain [sic] on deposing"). Plaintiffs insist that there is no other source from which they can obtain the information sought. *Doc. 49* at 6.

In response to Plaintiffs' Motions to Compel Disclosure, Defendant has asserted the law enforcement privilege. This privilege was recognized by the Tenth Circuit in *United States v. Winner*, 641 F.2d 825, 831 (10th Cir. 1981), and

---

[2] Although Plaintiffs apparently seek a ruling from the Court, under Federal Rule of Evidence 601(B), as to the admissibility of Mr. Chairmonte's statement, the Court reserves ruling as to the admissibility of such evidence for consideration by the trial judge.

[3] Plaintiffs indicated in an earlier Motion to Compel Disclosure that they seek the identities of the undercover officers so that they will know "WHO [they] are suing in their individual capacities." *Doc. 38* at 2. However, as the Court clarified at the August 8, 2017 Status Conference, the City of Raton is the only defendant in this case. *Doc. 45.*

it aims to protect law enforcement from harm that might otherwise arise from the public disclosure of certain facts or information. *Id.* For instance, the privilege can be asserted to protect disclosure of law enforcement techniques, to protect the safety and privacy of witnesses and law enforcement personnel, and to prevent interference with an investigation. *Carbajal v. Warner*, No. 10cv2862 REB/KLM, 2015 WL 4055418 (D. Colo. July 2, 2015). In order to assert the privilege, "the responsible official in the department must lodge a formal claim of privilege, after actual personal consideration, specifying with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege." *Winner*, 641 F.2d at 831. Initially, it is the burden of the party claiming the privilege to establish its requisite elements. *Carbajal*, 2015 WL 4055418 at *1. Thereafter, a party may overcome such a showing by demonstrating "substantial need" for the information and the inability to obtain its "substantial equivalent" through other means. *Id.* at *2. Courts apply a balancing test to determine whether a party has articulated substantial need. *See, e.g., In re the City of New York*, 607 F.3d 923 (2d Cir. 2010).

Here, Defendant has provided the affidavit of Chief of Police John Garcia, who states that he is familiar with the operations of the Region IV Narcotics Task Force and is responsible for the City of Raton's involvement with that task force. *Doc. 47* at Ex. 2 at ¶ 2. Chief Garcia reviewed Plaintiffs' request for the disclosure of the identities of the undercover officers associated with Lawrence Martinez's arrest. *Id.* at ¶ 3. In response, he outlines the risks associated with providing these identities and explains that, because of the violent nature of the

7

drug trade, doing so may put their lives at risk. *Id.* at ¶ 5-11. As an alternative, Chief Garcia suggests that there are uniformed officers who can provide responses to questions from Plaintiffs regarding the subject arrest and searches. *Id.* at ¶ 13.

The Court finds that Chief Garcia's affidavit satisfies Defendant's burden to establish that the privilege applies. This does not end the inquiry, however, as the Court must also consider whether Plaintiffs have a "substantial need" for the information or whether they may obtain the "substantial equivalent" through other means.

While Plaintiffs have not demonstrated substantial need for the *identities* of these undercover officers, they *have* demonstrated the need to elicit certain information from them. After all, Plaintiffs allege that Undercover Officer Lobo and Undercover Officer #A are the only living participants in the subject drug buy, other than Lawrence Martinez, and that the affidavit in support of the warrant for Lawrence Martinez's arrest was false and misleading. Balancing Plaintiffs' need for information from the undercover officers with the officers' interest in preserving their anonymity and safety, the Court concludes that the best course is to permit Plaintiffs to conduct depositions upon written questions pursuant to Federal Rule of Procedure 31. *See N.H. Motor Transp. Ass'n v. Rowe*, 324 F. Supp. 2d 231, 237 n.5 (D. Me. 2004) (noting that depositions upon written questions are the functional equivalent to interrogatories on nonparties).

While Plaintiffs may prefer to conduct in-person depositions of "Undercover Officer Lobo" and "Undercover Officer #A," the Court will instead

permit them to propound 25 written deposition questions to each undercover officer. Pursuant to Rule 31(a)(3), Plaintiffs shall serve their proposed deposition questions on Defendant along with a deposition notice addressed to Undercover Officer Lobo and Undercover Officer #A. *See* Fed. R. Civ. P. 31(a)(3). Plaintiffs' notice must "state the name or descriptive title and the address of the [stenographer] before whom the deposition[s] will be taken." *See id.*

Defendant must serve any objections as to the form of the written deposition questions within 14 days of receiving them. Additionally, Defendant may serve cross-questions to the undercover officers within the same time period. *See* Fed. R. Civ. P. 31(a)(5). Any redirect questions by Plaintiffs must be served on Defendant within seven days after receipt of any cross-questions. *See id.* Plaintiffs must then deliver to the stenographer and to Defendant a copy of all the questions, cross-questions, and redirect questions and of the notices of deposition. *See* Fed. R. Civ. P. 31. Defendant shall promptly correspond with the designated stenographer and Undercover Officer Lobo and Undercover Officer #A to assist in setting the time and place for the deposition, which should not be shared with Plaintiffs. The stenographer must take the deponents' testimony in response to the questions, prepare and certify the depositions, and send the deposition transcript to Plaintiffs and Defendant, attaching a copy of the questions and of the notice. *See* Fed. R. Civ. P. 31(d). The deposition transcript shall not refer to the undercover officers by name, but should instead refer to them as "Undercover Officer Lobo" and "Undercover Officer #A," respectively.

**B. Audio Recordings**

In addition to the disclosure of the undercover officers' identities, Plaintiffs also raised concerns about the apparent unavailability of audio recordings that officers made during encounters with Lawrence Martinez. *Doc. 43* at 4. Plaintiffs expressed concern that if these recordings were unavailable and the undercover officers were not deposed, they would be left without any non-hearsay evidence to support their case. *Id.* They request sanctions against Defendant for its failure to produce the recordings. *Id.*

Defendant's counsel represented in filings before the Court that although Defendant made "good faith efforts to recover the requested recordings," as they have responded in discovery, they "had an encryption problem that made the recordings unrecoverable." *Doc. 42* at 3, ¶ 9. At the August 9, 2017 Status Conference before the Court, counsel for Defendant made similar representations. *Doc. 45.*

Based upon these representations by Defendant, the Court declines to award sanctions at this time. However, at its August 8, 2017 Status Conference the Court ordered Defendant to provide a supplemental certification that the recordings were not salvageable and outlining the steps that it had taken to provide the recordings to Plaintiffs. *See Doc. 45.* The Court furthered ordered Defendant to consider how it might provide those recordings to Plaintiffs so that they could employ their own expert in an attempt to salvage them. *Id.* It is not clear that Defendant has done so. As such, the Court orders Defendant to file a status report addressing its efforts to produce these recordings.

**Wherefore,**

**IT IS HEREBY ORDERED AS FOLLOWS:**

1. Plaintiffs' Motions to Compel Disclosure (*Docs. 12, 28, 38*) **are granted in part** to the extent that Plaintiffs are permitted to propound 25 written deposition questions to "Undercover Officer Lobo" and to "Undercover Officer #A." Cross questions and redirect questions will also be permitted as provided herein;

2. Plaintiffs' Motions to Compel Disclosure are **otherwise denied;**

3. Plaintiffs' Requests for a Telephonic Hearing (*Docs. 13, 29, 40*) **are denied;** and

4. Defendant shall file a **status report** with the Court addressing its efforts to produce the audio recordings that have been requested by Plaintiffs no later than October 31, 2017.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE